THOMAS B. ELLIS

*v.*

CHARLOTTE B. HILL *et al.*

*Filed at Ottawa May 12, 1896—Rehearing denied October 13, 1896.*

1. TRUSTS—*express trust cannot be created by parol.* An express trust cannot be created by parol under the Statute of Frauds, providing that all declarations or creations of trusts or confidences of any lands, tenements or hereditaments shall be manifested or proved by some writing signed by the party.

2. PARTITION—*what interest will enable one to maintain bill.* One who does not hold the legal title to a share of land cannot, in the absence of any writing showing that the legal title to a share in the land was held in trust for him, maintain a bill for partition.

3. SAME—*one claiming through parol agreement to convey cannot maintain bill.* One who has assigned a certificate of purchase of land to another as security for his indebtedness, and has made a subsequent parol agreement by which his creditor is to convey half the property to him, cannot maintain a bill for partition, where no specific performance of the contract is asked.

4. CONTRACT—*when contract to convey is within the Statute of Frauds.* A parol agreement by which one who has taken an absolute conveyance of land as security for the indebtedness of another is to retain the legal title to half of the land in satisfaction of such indebtedness and convey to the debtor the other half, is within the Statute of Frauds.

5. PLEADING—*prayer for general relief in partition does not cover redemption from mortgage and accounting.* Redemption from a mortgage, with an account as to the amount due thereon, cannot be granted under the prayer for general relief in a bill framed as for partition and making a special prayer for partition.

APPEAL from the Circuit Court of Mercer county; the Hon. JOHN J. GLENN, Judge, presiding.

W. A. WRAY, and ROBERT L. WATSON, for appellant.

W. A. MEESE, and J. H. CONNELL, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The original bill in this cause was filed May 22, 1894, by the appellant against the appellees for the partition of about 480 acres of land, a portion of which is underlaid with coal. The appellee, Charlotte B. Hill, is a sister of the appellant, and holds the legal title to the land in question, claiming to be the legal and equitable owner thereof. Appellees, Willis Hill and Harry W. Hill, sons of said Charlotte, and John M. Waters, their brother-in-law, under an agreement with said Charlotte, sank a coal shaft upon the land, erected buildings, put in machinery, and have taken out some coal. The appellee, William T. Crawford, is a son-in-law of said Charlotte, and acted as her agent to take charge of the land and collect the rents. The appellees thus named answered the bill. There were other defendants against whom the bill was taken as confessed.

For more than twenty years there had been litigation between appellant and one Cable, who held the title to the premises in controversy. Finally, in 1887 a decree for $41,500.00 was rendered in favor of appellant, under which said premises were sold on June 7, 1887, and bid in by appellant for the amount of the decree; and a certificate of purchase was issued to him. On September 1, 1887, appellant assigned this certificate of purchase to his sister, Mrs. Hill. Cable did not redeem the land from the sale, and on September 10, 1888, the master or special commissioner issued the deed to Mrs. Hill, the appellee, the assignee and holder of the certificate of purchase.

While appellant was engaged in the litigation referred to, his sister, Mrs. Hill, made advances or loans to him of large amounts of money. It is averred in the answer, that this indebtedness of appellant to Mrs. Hill, including interest thereon, amounted in 1888 to upwards of $30,000.00, and it is contended on the part of the appellees that the averment of the answer is sustained by the proofs. It is clearly established, that there was an indebtedness, and that it was very large.

The original bill alleges, that, on September 1, 1887, when appellant assigned the certificate of sale to his sister, he made a verbal agreement with her, by which she was to advance money to pay the indebtedness incurred by appellant in his litigation, and the taxes, etc., and by which she was to take one undivided one-half of said land, and he was to retain the other half; that she took out the deed or deeds in her own name and holds the legal title to all of the land, but that she holds the title to one-half thereof in trust for him. The prayer of the bill is for partition of the premises, one-half to be set off to appellant and one-half to Mrs. Hill.

Mrs. Hill set up in her answer, that the deed of September 10, 1888, was executed to her in payment of the indebtedness of over $28,000.00 then due to her from her brother, and that she thereby purchased the land for what he owed her. She denies, that she made any agreement, or entered into any arrangement, by which she was to have one-half of the land and hold the other half in trust for her brother. In her answer she pleads and relies upon the Statute of Frauds.

The cause was heard by the circuit court in January, 1895, and held under advisement until May 2, 1895, when the final decision was made, dismissing appellant's bill. At that time appellant made certain amendments to his bill by inserting allegations therein to the effect, in substance, that in the spring of 1889 appellant and Mrs. Hill entered into a verbal agreement, by which she was to let

appellant have about $6000, and that she should retain the title to said real estate as security for the same, and permit appellant to redeem the same in some reasonable time, but that if he could not redeem the whole amount in such time as Mrs. Hill chose to wait on him, then she should retain the absolute title to one-half of the land free of any defeasance, and she should convey the other half to appellant free of any lien or encumbrance.

The contention of counsel for appellant is thus stated by them in their brief: "Upon the part of appellant we maintain that the certificates were assigned to Mrs. Hill as security for money loaned by her to him, and that when the time expired during which Cable could redeem the land, and he did not redeem it, the deed was by Ellis' consent issued to her as a continuance of said security. We further maintain that about two years later he and his sister made an agreement by which she contracted to supply him with money to pay certain specified debts, to wait on him a reasonable time for repayment, and in case he failed to repay her, to reconvey to him one-half the lands and retain the other half as full satisfaction of all his obligations to her."

The following disposition of the cause appears in the certificate of evidence: "The court said in deciding this case at the conclusion: This complainant asks, under the general prayer of this bill, for such other and further relief as might seem meet and proper to the court, and under that general prayer he would be entitled to relief; but this bill should be amended, stating the transaction as a mortgage, and then in that case it should be referred to the master to have the account stated between the parties and the complainant given an opportunity to redeem. If, however, the complainant does not desire to stand by this announcement of the court, then, as a matter of course, the court will deny the relief asked for in the amended bill and dismiss the original bill, and then the case can go up on that record." The complainant

elected to stand by his original bill, and the court then dismissed the bill for want of equity.

Did the circuit court err in dismissing the bill? The bill was a bill for partition, proceeding upon the theory, that, although the legal title to the whole of the land was in the appellee, Charlotte B. Hill, yet she owned only an undivided one-half of the land, and held the legal title to the other undivided half in trust for appellant; in other words, that she owned the legal title to one undivided half, and that appellant owned the equitable title to the other undivided half.

The contention, that appellant was the equitable owner of an undivided half of the land, rests upon an alleged verbal agreement, set up in the bill as finally amended, and claimed to have been made in the spring of 1889. At the latter date, Mrs. Hill held the legal title to all the land under a deed executed to her on September 10, 1888, by the master or special commissioner.

It will be here noticed, that there is an essential difference between the transaction as alleged in the original bill and the transaction as alleged in the original bill after it was amended. In the original bill it is stated, that, when appellant assigned the certificate of purchase to his sister on September 1, 1887, he verbally agreed with her, that she should hold half of the land as security for, or in payment of, his indebtedness to her, and the other half in trust for him. Under this view, the transaction was only a mortgage or sale as to half of the land; the assignment of the certificate operated as a security or a sale only so far as it had the effect of transferring the equitable interest in one-half of the land; and so, when in September, 1888, the certificate was taken up and a deed was issued to Mrs. Hill, the absolute conveyance to her was a mortgage security or a sale to her as to one-half of the land only. As to the other half of the land, it was not transferred to her, by the assignment of the certificate or by the subsequent deed, either as a

security for debt or as a payment of indebtedness; on the
contrary, it is specifically alleged, that she received the
title thereto to hold it in trust for appellant under a ver-
bal agreement to that effect. It cannot be claimed, that
a resulting trust was here created. A resulting trust
arises where one of two parties advances the purchase
money for land, and the other takes the title; and it must
arise at the time when the conveyance is executed. (*Reed
v. Reed,* 135 Ill. 482; *VanBuskirk v. VanBuskirk,* 148 id. 9).
But no purchase money was advanced by appellant either
when the certificate was assigned to his sister, or when
the deed was made to her. It follows, that an attempt
is here made to create an express trust by parol. This
cannot be done under the Statute of Frauds, which pro-
vides that, "all declarations or creations of trusts or con-
fidences of any lands, tenements or hereditaments shall
be manifested or proved by some writing signed by the
party," etc. (1 Starr & Cur. p. 1200). As appellant did
not own the legal title to an undivided half of the land,
and as it was not shown by any writing that the legal
title to an undivided half thereof was held in trust for
him, he was certainly in no position to ask for partition
under the allegations of his bill as originally framed.

According to the averments of the bill as it was
amended, the certificate of purchase of all the land was
assigned to Mrs. Hill as security for appellant's indebt-
edness to her, and the execution of the deed to her in .
September, 1888, was a continuation of the security.
Under this theory, Mrs. Hill in the spring of 1889 held
the legal title as mortgagee, the deed to her in 1888,
though absolute in form, being a mere security. The
bill as amended thus presents a case where a mortgagee,
having a deed absolute on its face, makes a verbal agree-
ment with the mortgagor, that the latter shall give up
his right of redemption in one-half of the mortgaged
premises, that the conveyance shall stand as an absolute
transfer to the mortgagee of one-half of the premises,

and that the other half shall be held in trust for the mortgagor and be conveyed to the latter by the mortgagee.

Courts do not look with favor upon any agreement subsequently made by a mortgagor, that what was originally a mortgage shall be regarded as an absolute conveyance. Such an agreement will not be sustained unless it is fairly · made, and no undue advantage is taken by the creditor. (1 Jones on Mortgages, sec. 251). In *Wynkoop* v. *Cowing*, 21 Ill. 570, referred to by counsel for appellant, the subsequent agreement, made between the mortgagor and mortgagee for the purchase of and extinguishment of the equity of redemption, was in writing, and signed by both of the parties to it. In the case at bar, it is admitted by appellant that the relation of mortgagor and mortgagee between himself and Mrs. Hill was terminated in the spring of 1889, but it is contended that she then verbally agreed to retain the legal title to an undivided one-half of the land and to convey to him the other half. We think that this oral agreement to convey to him one-half of the land, to which she held title, was void under the Statute of Frauds, which provides, that "no action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith,",etc. (1 Starr & Cur. Stat. p. 1192).

In *Morton* v. *Nelson*, 145 Ill. 586, where property was claimed to have been purchased by three persons and the title was placed in one of them, a verbal agreement, that the latter should make a deed to the others, so as to invest them each with a one-third interest, was held to be invalid, because it related to a sale of lands, or an interest therein, and was not in writing nor signed by the party alleged to have made the agreement. (See, also, *Stephenson* v. *Thompson*, 13 Ill. 186; *Perry* v. *McHenry*, id. 227; *Cloud* v. *Greasley*, 125 id. 313).

It is to be furthermore observed, that the bill in the case at bar asks for a partition of the property before the complainant has established any title to it.   The bill sets up a parol agreement to convey land, and asks the court, on the proof of such parol agreement, to appoint commissioners to make partition, but contains no prayer for a specific performance of the contract.   "A decree should first be had for a specific performance, on a bill filed for such purpose, and which, no doubt, might also contain a prayer for the partition of the lands, in case a specific performance should be decreed." (*Williams* v. *Wiggand,* 53 Ill. 233; *Reynolds* v. *McCurry,* 100 id. 356).

We are of the opinion, that the appellant was not entitled to a partition of the premises, either under the allegations of the original bill, or under the amendments subsequently made thereto.

The circuit court held, that appellant was entitled to redeem as from a mortgage, and that an account should be stated between the parties with a view of ascertaining the amount of indebtedness to be paid by appellant to entitle him to a redemption, but required, as a condition to granting relief of this nature, that the bill should be amended so as to make it a bill for redemption and accounting, instead of a bill for partition.   Whether this view was correct or not need not be inquired into, as appellant declined to amend his bill as suggested, and it was properly dismissed.

It is now contended on the part of appellant, that the circuit court should have allowed him to account and redeem under the general prayer for "other and further relief." The general rule is, that, where there is a special prayer for particular relief and also a prayer for general relief, only such relief will be granted under the latter prayer as is agreeable to, or consistent with, the case made by the bill, and as the case stated in the bill and sustained by the proof will justify. (Story's Eq. Pl. sec. 40; 1 Beach's Modern Eq. Pr. secs. 91, 92).   If the prayer is

for special relief, and for other relief in addition thereto, no relief which is inconsistent with the special relief asked for, will be granted. That is to say, no relief can be granted under the general prayer in a bill in chancery, which is of a nature distinct and independent of the special relief prayed. (*Colton* v. *Ross,* 2 Paige, 396; *Franklin* v. *Osgood,* 14 Johns. 527; *Wilkin* v. *Wilkin,* 1 Johns. Ch. 111).

We are inclined to think, that, where a bill is framed as a bill for partition and makes a special prayer for partition, redemption from a mortgage, together with an accounting as to the amount due on the mortgage, is not such a species of relief as can be granted under the prayer for general relief in such bill. In the suit at bar, the case made by the bill is a case where appellant is alleged to be owner of one-half of the land and appellee, Charlotte B. Hill, is alleged to be the owner of the other half, and where it is prayed that a partition may be made and the respective interests may be set apart to the owners. This being so, the case stated in the bill and the special prayer of the bill are inconsistent with a case where the deed held by said appellee is declared to be a mortgage, and she is declared to be, not owner of any part of the premises, but mortgagee of the whole, and where appellant is declared to be, not the owner of one-half, but of the whole subject to the mortgage, and where the relief proposed to be granted is, that he be allowed to redeem the whole of the premises from such mortgage upon payment of the amount ascertained to be due.

We are of the opinion, that the circuit court did not err in holding that redemption and accounting could not be allowed under the general prayer of the present bill, and that the bill should have been amended before appellant could be entitled to such relief.

The decree of the circuit court is affirmed.

*Decree affirmed.*