Robert P. Butts and Company, Claimant-Appellee, v. Estate of Robert P. Butts, Jr., Defendant-Appellant.

Gen. No. 11,080.

Fourth District.

February 17, 1970.

Sorling, Catron & Hardin, and Giffin, Winning, Lindner, Newkirk & Cohen, of Springfield (James M. Winning, of counsel), for appellant.

J. Waldo Ackerman, of Springfield (Simon L. Friedman and Robert S. O'Shea, of Springfield, of counsel), for appellee.

TRAPP, J.

Defendant appeals from an order of the Circuit Court allowing a claim of $95,298.63 against the Estate of Robert P. Butts, Jr., as a preferred 5th-class claim under the statute, in favor of Robert P. Butts and Company.

Robert P. Butts and Company, a corporation, hereinafter designated claimant, had commission contracts for sale of insurance policies of various insurance companies, including Lincoln Casualty Company of which it was the controlling shareholder. Claimant is in receivership and the casualty company is in rehabilitation under the jurisdiction of the Illinois Insurance Department.

The 1,500 shares of outstanding stock of claimant corporation were owned as follows: Robert P. Butts, Sr., 1,200 shares; Robert P. Butts, Jr., the decedent here, 100 shares; two brothers of the decedent, 100 shares each. Robert P. Butts, Sr. was president of the claimant company, and the decedent, Robert P. Butts, Jr., was secretary-treasurer and also a director. The decedent was also president and director of Lincoln Casualty Company. There is no dispute that decedent owed claimant $95,298.63 in respect to variously labelled advances at the time of his death, August 8, 1964.

Upon appeal it is urged that the claim may only be allowed as a 7th-class general claim, rather than a

5th-class preferred claim, under chapter 3, § 202, Ill Rev Stats 1967, and that as to the total amount claimed the sum of $17,250 is barred by the 5-year statute of limitations which is effective as to unwritten contracts and the conversion of property.

Section 505 of the Illinois Insurance Code (Ill Rev Stats 1967, c 73, par 1065.52), provides in part:

> "That portion of all premiums or monies which an agent, broker or solicitor collects from an insured and which is to be paid to a company, its agents or his employer because of the assumption of liability through the issuance of policies or contracts for insurance, shall be held by the agent, broker or solicitor in a fiduciary capacity and shall not be misappropriated or converted to his own use or illegally withheld by the agent, broker or solicitor."

Rule 31.13 of the Illinois Insurance Department, after repeating that portion of the statute, quoted above, provides in part:

> "Effective as of the date hereinafter fixed, all such funds hereinafter referred to as 'premium funds' shall not in any manner be commingled with any other funds or monies not of such fiduciary character and such funds shall be deposited in a special demand (checking) account which shall be established for such purpose and shall be titled 'Premium Fund Trust Account.' Such account shall, in the case of resident brokers and all agents, be maintained with a national banking association or state banking corporation having banking offices at and within the State of Illinois."

This rule also requires the keeping of complete records of the source of funds and all disbursements sub-

ject to the inspection of the Department of Insurance for three (3) years.

Claimant company maintained a Premium Fund Trust Account, but did not deposit all premiums received in said account as required by the Department rule. Albert O. Eck, Jr., certified public accountant, testified to year-end deficiencies, that is amounts by which the Premium Fund Trust Account was short deposits of premiums actually collected as follows:

| March 31, 1959 | $107,153.44 |
| March 31, 1960 | 276,493.14 |
| March 31, 1961 | 232,107.60 |
| March 31, 1962 | 432,797.85 |
| March 31, 1963 | 422,051.75 |
| March 31, 1964 | 368,615.54 |

Since the deficient premium sums were actually collected, they were in fact, contrary to the departmental rule, commingled with general funds of the claimant company. All sums paid to the decedent were paid from the general funds with which the premium funds were commingled.

Defendant contends that since decedent was not an "express trustee" of funds with respect to claimant, the claim cannot be allowed as a 5th-class claim. The definition of a 5th-class claim under Ill Rev Stats 967, c 3, § 202, is:

"5th. Money and property received or held in trust by decedent which cannot be identified or traced; . . . ."

Defendant relies upon In the Matter of Estate of Reiter, 298 Ill App 313, 18 NE2d 563, where a deceased broker had been given a mortgage note to collect for claimant. On his death it appeared the proceeds had

been commingled with his general bank account and half of the proceeds were identifiable as part of the bank account, whereas the other half was not traceable. The court ordered the traceable portion paid over forthwith, and allowed the untraceable portion as a preferred claim under the statute which then provided:

> "Fifth. Where the deceased has received money in trust for any purpose, his executor or administrator shall pay out of his estate the amount thus received and not accounted for."

The appellate court reversed as to the untraceable portion saying, at p 323:

> " 'It has been repeatedly held by the courts of this state that the word "trust" as used in the 6th clause (now 5th clause) applies only to technical or express trusts, and that it has no application to trusts which the law implies as growing out of contracts (citing cases).' "

The origin of the narrow interpretation of preferred claims of this class is somewhat obscure. On the face of the statute, the only conditions are that they be trust funds which are not traceable. If they are traceable they need not be allowed as a claim, but may be ordered paid over as they are not the property of the estate. In Weer v. Gand, 88 Ill 490, on 493, where claimant had accepted a note and there was really no trust at all, the court said:

> "where one person employs another as an agent, loans money or sells property on credit, a confidence and trust is imposed, to a greater or less extent, and yet such transactions have never been regarded by courts as falling within any recognized class of trusts."

It would seem that the early cases were determined on the basis of whether or not a technical trust existed. The Reiter case above quoted is especially difficult because a trust was, in fact, recognized as to the traceable money and logically, if a trust existed, the untraceable portion should have been allowed as a preferred claim. There is no doubt that if one received money as an executor, administrator or guardian and died without accounting, such was charged against his executor as a preferred claim. Wilson v. Kirby, 88 Ill 566, on 569. The statute was then broadened in 1871-2 to include instances, "where the decedent has received money in trust for any purpose, his executor or administrator shall pay out of his estate the amount so received and not accounted for, . . . ." Of this change the court in Wilson v. Kirby, 88 Ill 566, on 569 said:

> "It is certain that the legislature, by the phrase 'in trust for any purpose,' intended to extend the class of preferred claims, but how far, admits of question."

That receipt of money as executor, administrator or guardian was clearly receiving money "in trust for any purpose" is confirmed in Svanoe v. Jurgens, 144 Ill 507 on 511, 33 NE 955.

We do not find that the cases cited by defendant or, for that matter any Illinois authorities discovered, hold that in order to be a 5th-class claim the trust must be an express trust in the sense that requires a written trust instrument. From the origin of the present statute and its predecessors, trusts arising from an official capacity such as executor, administrator or guardian qualified for preferred classification.

Here the situation is that of a broker who is by statute subject to the regulation of the Insurance Depart-

ment of the State of Illinois and whose particular acts as a receiver of insurance premiums are declared by statute to be in a fiduciary capacity. He is, by rule of the Department of Insurance, ordered to segregate, identify and account for the fund in a particular manner. There is no doubt that in reference to the broker this situation meets all the qualifications of a technical trust. The public character of the trust gives it added significance in reference to consideration of its status as a preferred claim.

■ The next step is to consider whether this trust maintains its character in the hands of the decedent in question. It has frequently been held that one who takes from a trustee who is violating his trust while having notice of such violation becomes himself a trustee. Harris v. Ingleside Bldg. Corp., 370 Ill 617 on 624, 19 NE2d 585; Perry on Trusts, 7th ed, § 334; Wobbe v. Schaub, 143 Ill App 361, on 367.

■ It would be difficult to imagine a situation more appropriate to charge the decedent transferee with notice and thus to make the transferee a trustee, than the situation at hand. The decedent was the financial officer, the secretary-treasurer of the brokerage company which was charged with the statutory trust, and his very transfer to himself for nonbusiness purposes or purposes which resulted in an officer being indebted to the company, was the trust violation. In a very real sense the decedent was the defaulting trustee of a statutory trust.

■■ Defendants object that claimant had other income and that it has not been established that the money paid to decedent came from trust monies. We do not think that this burden is on the claimant. It is well established, beyond the requirement of citation of authority, that one who commingles trust funds with nontrust funds assumes the burden of segregation of the funds.

The issue of the 5-year statute of limitations is controlled by Auer v. William Meyer Co., 322 Ill App 244, 54 NE2d 394, which holds that where directors of a corporation violate a trust in a situation where the directors are in complete control of the affairs, and where no notice of the violation has reached a minority stockholder, the statute of limitations is not a bar to the assertion of the rights of such minority stockholder. Claimant was a family company charged with a public trust. Until the collapse of the claimant company or the death of the decedent, there was no one to assert the trust.

The judgment of the circuit court is affirmed.

Affirmed.

CRAVEN, P. J. and CREBS, J., concur.